UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          Chapter 11

HS 45 JOHN LLC,                                 Case No. 15-10368 (SHL)

                    Debtor.
------------------------------------------------------------x

## DEBTOR'S OBJECTION TO THE CLAIM OF
## CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.

HS 45 John LLC (the "Debtor") as and for its Objection to expunge and/or substantially reduce the proof of claim filed by Consolidated Edison Company of New York, Inc. ("Con Ed"), pursuant to 11 U.S.C. §502(c), represents and shows this Court as follows:

### Preliminary Statement

1. Con Ed has filed a highly dubious estimated proof of claim in the sum of $127,553.61, (No. 5), which is the product of pure estimation and guesswork and makes no effort reconcile the fact that the Debtor has managed the property for a limited period of time and is not responsible for charges pre-dating its involvement.

2. In point of fact, the actual electric and steam usage is a fraction of the amount sought and has been effectively paid when the Debtor forwarded the check to Con Ed for the sum of $55,652.29 in December 10, 2014. Thus, for all of the reasons set forth below, the claim is improper and must be expunged or substantially returned. A copy of the Claim is annexed hereto as Exhibit "A".

### Summary of Deficiencies

3. First, the Claim includes substantial charges ($55,534.25) for electrical services alleged to have been provided to the property at 45 John Street, New York, NY (the "John Street Property") prior to the period for which the Debtor assumed management

1

(September 19, 2014). Obviously, any charges prior to that date are not the Debtor's responsibility and cannot be part of a claim in this bankruptcy case.

4. Second, the charges are based largely on estimates, rather than actual meter readings. In particular, the building is vacant, with no on-going construction, yet the bills include monthly electric bills as high as $11,728.64. This is an obvious error and must be adjusted. Moreover, the statements supplied by Con Ed are not reliable, having been modified on multiple occasions without rhyme or reason.

5. Third, Con Ed failed to give proper credit to a payment in the amount of $55,652.29 made by the Debtor on December 10, 2014.

**Background Facts**

6. Non-debtor HS John Lofts LLC ("John Lofts") purchased the John Street Property in March 2014.

7. On September 19, 2014, the Debtor entered into the contract with John Lofts to purchase the John Street Property. Under the contract of sale, the Debtor assumed management of the John Street Property pending a closing, which has yet to occur.

8. Pre-petition, the Debtor contacted Con Ed to arrange payment of the then-current bills, whereupon the Debtor became aware of the unique relationship relating to the steam heat account.

9. More particularly, under a separate agreement dating back to 2001, when the John Street Property and an adjacent parcel located at 7 Dutch Street (the "Dutch Street Building") were both owned by the same entity, the steam heat for the Dutch Street Building was, and continues to be supplied through a steam pipe metered on the John Street Property. In

return for continuing to provide steam for hot water and heating to the Dutch Street Building, the owner of the Dutch Street Building is required to pay 12% of the steam bills.

## History of Misbillings

10. Since the fall of 2014, the Debtor has requested copies of the outstanding bills with mixed results on or about November 25, 2014, the Debtor obtained a bill for $55,652,29 which included a deposit of $21,690, and $33,962.29 for steam provided prior to the Debtor's management which is not properly chargeable to the Debtor. Copies of the first set of statements as provided to the Debtor (which include only the first page of each two-page statement) are attached hereto as Exhibit "B".

11. Although the Debtor was not liable for this steam bill, the Debtor paid the sum of $55,652.29 on December 10, 2014 to pacify Con Ed. This check included a security deposit and funds not owed by the Debtor for the pre-September 19, 2014 charges. A copy of the check is annexed hereto as Exhibit "C".

12. Even after receiving the Debtor's check, Con Ed still continued to mail the monthly statements to John Lofts instead of the Debtor, and no further bills were received through the Chapter 11 filing on February 20, 2015. Moreover, Con Ed continued to ignore the Debtor post-bankruptcy, so that the steam and electric meters remained unread until August, 2015, when the Debtor was finally able to get Con Edison to come to the property for an actual reading.

13. Also in August, the Debtor finally received copies of the bills incurred mailed to John Lofts. Attached hereto as Exhibit "D" are copies of the statements to John Lofts printed on August 6, 2015, covering the period from October 10, 2014 through June 12, 2015. A review of the second page of each of the statements confirms that there were no meter readings

3

during this entire period. In fact, the first meter reading after the Debtor assumed management of the John Street Property did not occur until August 3, 2015 (almost a year later).

14. New billing statements were then issued in the Debtor's name on September 11, 2015, showing the bills for the period from February 20, 2015 through August 12, 2015. Copies of these statements are appended hereto as Exhibit "E" and total $41,004.39, including charges in the amount of $24,876.39 since February 20, 2015 and a requested security deposit of $16,128.00.

15. A comparison of the various bills and the statements appended to the Claim is revealing. For example, the bill for the period from October 10, 2014 to November 10, 2014 that was sent from Con Ed to John Lofts in November of 2014 (*See* Exhibit "B") states that steam charges for the period were $1,409.97. A copy of the bill provided by Con Ed to the Debtor on August 6, 2015 for the same period of October 10, 2014 to November 10, 2014 (*See,* Exhibit "D") shows a charge of $2,598.02. No explanation has been provided as to why the bills are not identical.

16. The August 6, 2015 copy of the bill sent to John Lofts (*See,* Exhibit "D") for the period ending February 20, 2015 and for the period ending March 16, 2015 clearly shows that the meter reading of 39972 as of February 20, 2015 was an estimate. However, the new bills that were addressed to the Debtor (*See,* Exhibit "E") starts with a meter reading of 39972 that is now listed as "actual". Moreover, the covering e-mail from Con Ed, a copy of which is attached as part of Exhibit "E" claims that there was a meter reading on February 20, 2015 because of the Chapter 11 filing. This statement is completely inaccurate. To repeat, there were no meter readings at least from October 2014 until August 3, 2015, rendering all of the charges in the proof of claim pure speculation.

4

17. Moreover, it is important to note that since the John Street Property is vacant, the thermostat is maintained at 40° year round[1], so that Con Ed's estimates of high usage in the winter are likewise incorrect. Indeed, the Debtor believes that the payment of $55,652.29 it previously made will more than cover the actual claim.

18. The bills for the electrical meter are similarly suspect. Copies of the electrical bills prior to March 6, 2015 have not been provided by Con Ed. Copies of the bills since then, which are attached as Exhibit "F", show the charges are entirely estimated. Moreover, the statement of account attached to the Claim (*See*, Exhibit "A") contains several obvious infirmities.

19. The Claim documentation shows three separate metered accounts (since the Chapter 11 was filed, there is only one account). The charges on these accounts date back to January 2014, before John Lofts purchased the John Street Property, let alone the September 19, 2014 assumption of management by the Debtor.

20. Moreover, the monthly charges of anywhere from zero to 73320 kilowatt hours for each of the three accounts are baseless, as this is an empty building with only limited electrical use. The 30,000 to 70,000 kilowatt hours each month being billed for each of the three accounts prior to the Chapter 11 filing is therefore wholly inaccurate.

21. Interestingly, Con Ed has only been charging 400 kilowatt hours since the Chapter 11 case began, but again, without readings even these reduced estimates are suspect.

22. Notwithstanding the foregoing, as an accommodation, the Debtor paid a $1,000 deposit and has been making monthly payments since July 6, 2015, in the total amount of $1,278.54.

---

[1] Since the Dutch Street Building uses only a small percentage of the steam, the low thermostat does not negatively impact the level of heat available for the tenants.

## Scope of the Objection

23. In view of the foregoing, that the entire Claim is suspect and should be substantially reduced, if not disallowed in its entirety. In absence of any reliable documentation from Con Ed, the Debtor proposes that on appropriate charge for electric is $30 per month per account or $90 per month, based on the statements appended to the Claim which show similar minimum monthly charges for periods of little or no actual service between May 2014 and December 2014. The Debtor proposes a $1,000 per month charge for the steam heat.

| | | |
|---|---|---|
| Electric | September 19, 2014 – February 19, 2015 | $90 x 5 = $450 |
| Electric | February 20, 2015 – December 31, 2015 | $90 x 10.3 = $9207 |
| Steam | September 19, 2014 – February 19, 2015 | $1000 x 5 = $5000 |
| Steam | February 20, 2015 – December 31, 2015 | $1000 x 10.3 = $10,300 |
| Subtotal | | $16,677 |
| Less prior payments | | |
| Electric | | ($2,278.54) |
| Steam | | ($55,652.99) |
| Total | Refund due to the Debtor: | ($41,254.53) |

WHEREFORE, the Debtor respectfully prays for the entry of an Order consistent with the foregoing, together with such other and further relief as may be just and proper.

Dated: New York, New York
November 25, 2015

GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
*Attorneys for the Debtor*
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By: <u>J. Ted Donovan, Esq.</u>

x:\gwfg\new data\yen\word\hs 45 john llc\objection to con ed claim 11-25-15 v1.docx